William BROWN and Nancy
Brown, Appellants,

v.

DOW CHEMICAL COMPANY and
Shell Chemical Company,
Appellees.

No. 88–1854WA.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1988.

Decided May 23, 1989.

Floyd M. Thomas, Jr., El Dorado, Ark., for appellants.

Robert K. Walsh, Little Rock, Ark., for appellees.

Before McMILLIAN and BEAM, Circuit Judges, and HARPER,* Senior District Judge.

HARPER, Senior District Judge.

Appellants are William and Nancy Brown (hereinafter appellants.) They sued Dow Chemical Company (hereinafter Dow) and Shell Chemical Company (hereinafter Shell) in strict liability and negligence arising out of the exposure of William Brown (hereinafter Brown) at his place of employment to the chemical compound dibromochloropropane (hereinafter DBCP). Appellants allege that Brown's exposure to DBCP rendered him sterile. Appellants base their claims against Dow and Shell (referred to collectively as appellees) on the ground that appellees are co-holders of patents for DBCP, and they, therefore, were obligated to warn Brown and his co-workers that exposure to DBCP could cause sterility.

Appellees filed a motion for summary judgment asserting that the doctrine of collateral estoppel precluded the adjudication of the issues herein. Appellees based their motion on the fact that appellants had earlier filed a workers' compensation claim in January of 1982 alleging a connection between Brown's exposure to DBCP and his sterility. The opinion of the Administrative Law Judge, which was issued on July 11, 1986, was in Brown's favor. Appellees appealed to the Full Commission and the decision was reversed because the evidence was insufficient to establish causal connection by a preponderance of the evidence. On appeal to the Arkansas Court of Appeals, the reversal of the Full Commission was upheld on the ground that the Court could not conclude that the finding of the Full Commission was not supported by substantial evidence nor was the wrong standard of proof applied. The District Court for the Western District of Arkansas granted appellees' motion for summary judgment on the grounds of collateral

estoppel, and the running of the statute of limitations.

The substantive facts leading to this appeal are as follows: In 1977, Brown was employed by the Velsicol Chemical Company (hereinafter Velsicol) at El Dorado, Arkansas. He was hired to work in the manufacturing of DBCP. Velsicol notified Brown in 1977 that exposure to DBCP might lead to sterility. He sought the advice of Dr. Robert M. Murfee, a urologist. Dr. Murfee conducted tests and found Brown's semen to be without sperm. Brown remained a patient of Dr. Murfee through December, 1983, by which time Brown's sperm count had rebounded, yet remained obligospermic (deficient in the number of spermatozoa in the semen). Dr. Murfee did not determine that there was a causal connection between Brown's low sperm count and his exposure to DBCP.

In 1982, Brown filed the previously mentioned workers' compensation claim in which he alleged a connection between his sterility and his exposure to DBCP. In 1984, Brown consulted Dr. Channing Meyer, Director of the Occupational Health Clinic at the University of Cincinnati Medical School. Dr. Meyer issued a written Summary Report on April 6, 1984, in which he made certain findings based on the history supplied to him by Brown. Dr. Meyer said that Brown's sterility "occurred directly as a result of [his exposure] to high concentrations of DBCP over the 3–4 month period of time in early 1977." Brown did not request a hearing on his claim until after Dr. Meyer issued the Summary Report. On July 11, 1986, the Administrative Law Judge issued an opinion favorable to Brown. As noted previously, appellees herein appealed that decision to the Full Commission, where it was reversed. This reversal was upheld by the Arkansas Court of Appeals. Appellants herein filed suit in the district court below where summary judgment was entered in favor of appellees. Appellants raise the following issues on appeal.

*The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

ISSUES ON APPEAL:

I. WHETHER THE COURT ERRED IN FINDING THAT A DECISION ADVERSE TO THE APPELLANT BY THE ARKANSAS WORKERS' COMPENSATION COMMISSION WAS RES JUDICATA AS TO THE ISSUES RAISED IN THIS SUIT.

II. WHETHER THE COURT ERRED IN FINDING THAT THIS PROCEEDING WAS BARRED BY THE APPLICABLE ARKANSAS STATUTES OF LIMITATIONS.

ARGUMENT:

I. WHETHER THE COURT ERRED IN FINDING THAT A DECISION ADVERSE TO THE APPELLANT BY THE ARKANSAS WORKERS' COMPENSATION COMMISSION WAS RES JUDICATA AS TO THE ISSUES RAISED IN THIS SUIT.

The Full Commission reversed the award by the Administrative Law Judge to Brown "because Brown has failed to produce a preponderance of the evidence to establish a causal connection between his exposure to the DBCP and his lowered fertility." The Full Commission had before it the reports of both Dr. Murfee and Dr. Meyer. After considering both of those reports, the Full Commission said "[t]he preponderance of the evidence is that Dr. Murfee is unable to say what caused Brown's low sperm count, and Dr. Meyer merely feels that the DBCP probably caused it. This medical evidence falls short of a preponderance of the evidence, which it is the burden of every claimant to produce in order to show his entitlement to benefits."

The district court granted appellees' motion for summary judgment on collateral estoppel grounds because the same causal connection issues were before it that had been presented to the Full Commission. Appellants argue that the issues before the district court were not identical to those before the Full Commission. Their position is that this case was presented to the Full Commission as part of an attempt to create a change in Arkansas' workers' compensation law. If successful, appellants argue, they would have established a rule in Arkansas that partial functional injury to the testicles is compensable. Arkansas law currently requires that a claimant show a permanent impairment to a scheduled member in order to qualify for benefits. Ark. Stat.Ann. § 81–1313(c) (Repl.1976).

When an administrative commission acts judicially or quasi-judicially, the decision and findings are entitled to finality under the doctrines of res judicata or collateral estoppel. *Bockman v. Arkansas State Medical Board,* 229 Ark. 143, 313 S.W.2d 826, 829 (1958); *Johnson v. Director of Labor,* 10 Ark.App. 24, 661 S.W.2d 401, 402 (1983). Decisions of the Arkansas Workers' Compensation Commission are entitled to res judicata and collateral estoppel effect. *See Gwin v. R.D. Hall Tank Co.,* 10 Ark.App. 12, 660 S.W.2d 947 (1983).

■ Appellants contend that the Full Commission failed to find that there was not substantial evidence to support a jury verdict on the causation issue. They argue that the decision of the Full Commission is limited to whether, on these facts, there was an injury to a scheduled member within the Arkansas statutory workers' compensation law. We disagree. As we noted previously, the Full Commission stated that "Brown has failed to produce a preponderance of the evidence to establish a causal connection between his exposure to the DBCP and his lowered fertility." This statement clearly reveals that the Full Commission made a conclusive finding as to the causation issue. There is no need whatsoever for this Court to give an overbroad interpretation to the Full Commission's opinion in order to justify applying the doctrine of collateral estoppel, as plaintiffs suggest.

■ Briefly, there is the matter of the opinion issued by the Arkansas Court of Appeals wherein the causation issue formed the basis for that court's affirmance of the Full Commission's opinion. If the administrative order were not entitled to preclusive effect, the reviewing court's decision would be. *Bockman v. Arkansas State Medical Board,* 313 S.W.2d at 829. This issue does not warrant reversal.

## II. WHETHER THE DISTRICT COURT ERRED IN FINDING THAT THIS PROCEEDING WAS BARRED BY THE APPLICABLE ARKANSAS STATUTE OF LIMITATIONS.

Under Arkansas law, the statute of limitations for products liability suits is three years. Ark.Code Ann. § 16–116–103. Brown filed a workers' compensation claim on February 2, 1982, alleging that his sterility was permanent and caused by his exposure to DBCP while employed by Velsicol. Brown testified at the workers' compensation proceeding that he believed as early as 1977 that his sterility was caused by his exposure to DBCP at Velsicol. The complaint herein was filed on April 6, 1987.

Appellees argue that Brown's testimony given at the workers' compensation hearing is clear irrebuttable evidence that he was aware of the probable causal connection between his sterility and his DBCP exposure long before the statute of limitations had run on his suit, and that his filing at this late date clearly is time-barred. Appellants argue that Brown merely suspected a causal connection between his sterility and his exposure to DBCP, and that suspicion alone would not have supported a lawsuit as early as that hearing. Brown argues that the statute of limitations began to run in April, 1984, when he received Dr. Meyer's opinion that his sterility was caused by his exposure to DBCP. Alternatively, he argues that this issue is disputed and, therefore, should be submitted to a jury. *See Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919, 925 (8th Cir.1970).

"[T]he limitations period can begin running if the manifested damage, even if slight, reveals the nature of the injury." The *Mulligan* court, in interpreting the Arkansas Products Liability Statute, further said that "the moment of accrual should be established by reference to a plaintiff's awareness of his or her condition, including both the fact of the injury and the probable causal connection between the injury and a product's use; * * *." 786 F.2d 859, 864 (8th Cir.1986).

 We agree with the district court's holding that, even disregarding the preclusive effectiveness of collateral estoppel, this suit could not be adjudicated because it is barred by the statute of limitations. It is obvious that Brown strongly suspected as early as 1977 that his exposure to DBCP at Velsicol was directly related to his sterility. This realization by Brown is all that was required to set the limitations period in motion. This issue does not warrant reversal.

Affirmed.