ROBERT J. GLADWIN, Judge
Appellant Laura Hilburn appeals the January 25, 2018 adjudication order entered by the Washington County Circuit Court adjudicating her child, T.M., dependent-neglected. Hilburn argues that the evidence does not support the circuit court's finding that T.M. was dependent-neglected. We affirm.
I. Facts
Thirty-year-old Hilburn has given birth to eight children. Her parental rights as to the oldest two children previously have been terminated, and the remaining six-including one-year-old C.H. and newborn T.M.-are in foster care. On December 27, 2016, the Arkansas Department of Human Services (ADHS) removed five-day-old C.H. from Hilburn's custody. Three months later, the circuit court conducted an adjudication hearing at which time the circuit court found that, given Hilburn's methamphetamine addiction and usage, C.H. was dependent-neglected. During the six months that followed, ADHS performed drug screens on Hilburn at least seven times. She failed each screen, testing positive for THC on March 21; for methamphetamine, amphetamines, and THC on April 4, and June 9; for THC on June 27, August 4, and August 10; and for methamphetamine, amphetamines, and THC on September 6.
Three months after Hilburn's last positive methamphetamine drug screen, she gave birth to T.M. on December 13, 2017. T.M. was not born with drugs in his system and does not seem to be suffering any adverse effects. Although Hilburn also tested negative at the time of T.M.'s delivery for any illegal substances, given her history of drug abuse coupled with her recent illegal drug use while pregnant, ADHS assumed emergency custody of two-day-old T.M.
T.M. was removed from the hospital by ADHS on an emergency basis because of neglect and parental unfitness to the juvenile, a sibling, or other juvenile. The affidavit accompanying the order stated that *887 Hilburn had used drugs throughout the pregnancy and had other terminations regarding her parental rights. One month later, the circuit court conducted an adjudication hearing in which it found that as a parent, Hilburn was unfit:
The Court finds, by a preponderance of the evidence, that [T.M.] is dependent/neglected as defined by the Arkansas Juvenile Code, as [T.M.] is at substantial risk of serious harm as a result of ... [parental unfitness].
Such finding is based on the Court's determination, after considering the evidence presented at this hearing, that these allegations in the petition and affidavit are true and correct. Specifically, in the open foster care case of [T.M.'s] half-sibling, [C.H. (72JV-16-952) ], Hilburn continued to test positive for illegal drugs-including methamphetamine-during the course of her pregnancy with [T.M.].
In the permanency planning hearing order from [72JV-16-952], and in the review hearing order from [72JV-16-952], the Court found that [Hilburn] tested positive for methamphetamine while she was pregnant with [T.M.]....
The Court finds that [Hilburn] was using methamphetamine while knowingly pregnant with [T.M.]. [Hilburn] testified today that the last time she used methamphetamine was in September-[Hilburn] was approximately seven (7) months pregnant with [T.M.] at that time. [Hilburn] had (and has) another [dependency-neglect] case on sibling [C.H. (72JV-16-952) ] which is open-[Hilburn] was [unreadable] is receiving services and drug screens throughout [C.H.'s] case and continued to use drugs[.]
On January 18, 2018, the circuit court ultimately adjudicated T.M. dependent-neglected due to Hilburn's drug use, and T.M. remained in foster care. Appellant filed a timely notice of appeal on January 29, 2018.
II. Standard of Review and Applicable Law
Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2017). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325. In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Ward v. Ark. Dep't of Human Servs. , 2018 Ark. App. 376, 553 S.W.3d 761. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. Id. The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. Id.
Arkansas Code Annotated section 9-27-303(18)(A) defines a "dependent-neglected juvenile" as
any juvenile who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile:
(i) Abandonment;
(ii) Abuse;
(iii) Sexual abuse;
(iv) Sexual exploitation;
(v) Neglect;
(vi) Parental unfitness; or *888 (vii) Being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian.
A child is dependent-neglected when the preponderance of the evidence shows that a child is at a substantial risk of serious harm due to parental unfitness. Ark. Code Ann. § 9-27-303(18)(A)(vi). Illegal drug use by a parent makes the parent unfit. See Ward v. Ark. Dep't of Human Servs. , 2011 Ark. App. 550, 2011 WL 4388579 ; Maynard v. Ark. Dep't of Human Servs. , 2011 Ark. App. 82, 389 S.W.3d 627.
An adjudication of dependency-neglect based on a prior adjudication of a sibling is not an automatic decision. Bean v. Ark. Dep't of Human Servs. , 2016 Ark. App. 350, 498 S.W.3d 315. "It is the particular facts of the case that give rise to the affirmation of the circuit court's dependency-neglect findings, and not due solely to the status of older siblings." Haney v. Ark. Dep't of Human Servs. , 2017 Ark. App. 437, at 6, 526 S.W.3d 903, 907.
III. Discussion
Hilburn notes that it is undisputed that neither she nor T.M. had illegal substances in their systems at the time T.M. was born; accordingly, Arkansas Code Annotated section 9-27-303 does not apply for any automatic removal of the child from appellant's care. She reiterates that at the adjudication hearing, the burden was on ADHS to show that T.M. was in imminent danger. In response to the motion for directed verdict, ADHS stated that its burden of showing "imminent danger" was met by the exposure of T.M. to illegal drug use while Hilburn was pregnant, as well as the fact that she "has not shown she has any semblance whatsoever of sobriety." Hilburn argued in response that there had been no new reasons since T.M. was born to take T.M. away and adjudicate him dependent-neglected.
Hilburn cites Haney , supra , in which this court found that the minor was incorrectly adjudicated dependent-neglected because two other siblings had been removed from the mother and ADHS rested solely on the status of the older siblings being removed. This court held that there was no evidence presented to support the finding that the minor would be at substantial risk of serious harm because the order to remove the minor was entered before the minor's birth, and the circuit court failed to assess "the level of risk posed" to the minor child "at the time of birth." Id.
Hilburn maintains that the same analysis used in Haney should be applied here. In her case, ADHS rested on the fact that she used drugs during pregnancy and had her parental rights to T.M.'s siblings terminated to establish the risk to T.M. There was no assessment of the risk at the time of T.M.'s birth, and the evidence showed no drug use at the time of his birth. Appellant urges that the mere fear and speculation of continued drug use is not sufficient for ADHS to meet its burden.
Similarly, in Conn v. Arkansas Department of Human Services , 79 Ark. App. 195, 85 S.W.3d 558 (2002), the decision to terminate parental rights was reversed based on insufficient evidence. The sole evidence submitted as a basis for termination was that the appellant parents had their rights terminated as to a sibling of the child in question. Appellant suggests a similarity to this case because all that was proffered was her prior drug use. She claims that there is no showing of any detrimental effect of that prior drug use on T.M. or any danger or harm that he would suffer.
Hilburn acknowledges that this court has held that a parent's illegal drug use supports a finding of dependency-neglect.
*889 See Tadlock v. Ark. Dep't of Human Servs. , 2009 Ark. App. 841, 372 S.W.3d 403. But Hilburn points out that in Tadlock , there were several factors supporting the finding in addition to the parent's drug use, including evidence of drug use after the child's birth. She notes that subsequent drug use was not established in this case.
In their motions to dismiss, both ADHS and Hilburn addressed the principle of Garrett's Law, found in section 9-27-303 (36)(B), regarding drugs found in the bodily fluids of the baby or mother as a basis for removal. Hilburn suggests that the legislative intent was to use the concurrent birth and positive drug test-not past use alone-to establish harm or abuse. She urges that because the legislature did not speak to the situation in which there was past drug use, only the concurrent birth and positive drug test automatically constitute abuse or harm.
Because the only evidence presented by ADHS was appellant's past drug use and her other open ADHS case with C.H., Hilburn contends that ADHS failed to meet its burden to show that T.M. was dependent-neglected. We disagree and hold that sufficient evidence established that T.M. was dependent-neglected based on Hilburn's parental unfitness because T.M.'s sibling, C.H., was found dependent-neglected and remained in ADHS custody, Hilburn had not complied with the case plan in C.H.'s case, Hilburn had tested positive for drugs throughout her entire pregnancy with T.M., and Hilburn had not submitted to random drug screens since T.M.'s birth.
A finding of dependency-neglect "does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm." Goodwin v. Ark. Dep't of Human Servs. , 2014 Ark. App. 599, at 3, 445 S.W.3d 547, 549. We acknowledge the holding in Haney , 2017 Ark. App. 437, at 6, 526 S.W.3d at 907, that "mindset alone" is not a basis for adjudication based on a sibling's prior adjudication of dependency-neglect when the parents had completed all services, including drug-and-alcohol screenings, all visitations, parenting classes, and individual and separate counseling. But Haney is distinguishable in that Hilburn was far from having completed all services and court-ordered case-plan requirements.
Hilburn's well-documented methamphetamine use had not been resolved at the time of the adjudication of T.M., as evidenced by the circuit court orders in C.H.'s case. C.H., was removed on December 27, 2016, based on Hilburn's use of methamphetamine while pregnant with C.H. and her inability to care for C.H. because of her methamphetamine addiction. C.H. was adjudicated dependent-neglected on March 8, 2017. The circuit court entered an order in that case as recently as December 18, 2017, finding that Hilburn had failed to make any progress toward mitigating the cause of removal and changing the goal in that case to adoption. Three days before that order was entered, T.M. was born on December 13, 2017. The circuit court specifically found:
[Hilburn] has refused to participate in services. [Hilburn] has not maintained weekly contact with DHS; has not informed DHS of her current telephone number and address; has not participated in individual counseling; has not demonstrated that she has abstained from illegal drug use, has not submitted to random weekly drug screens; has not provided DHS with proof of stable housing and employment; has not maintained a clean and safe home, has not demonstrated that she can protect C.H. and keep him safe from harm. [Hilburn] has continued to use methamphetamine throughout the life of this case. Additionally, *890 [Hilburn] filed a Consent to Termination of Parental Rights on December 4, 2017, and the 10 days to revoke her consent has lapsed. She has made no progress towards alleviating or mitigating the causes of the juvenile's removal from the home and completing the court orders and requirements of the case plan.
At T.M.'s adjudication hearing, Hilburn's caseworker, Whitney Muller, testified that she was Hilburn's caseworker in T.M.'s case as well as C.H.'s case. Muller also testified that Hilburn conceived T.M. sometime around March 2017 yet continued to test positive for drugs on March 21, April 4, June 9, June 27, August 4, August 10, and September 6, 2017. Muller also testified that Hilburn has been on the drug-screen call list but had not presented for any drug screens since T.M. had gone into foster care. Muller's testimony was corroborated by the documents presented to the circuit court, which included drug-screen results, appellant's ADHS history, and the case plan for T.M.
The supporting facts in this case are significantly different from those in Haney , where the adjudication of the older children-R.N. and B.N.-was based on a one-time incident. In Haney , the circuit court adjudicated them dependent-neglected because, while their parent napped, their sibling-A.N.1-had drowned. Id. The parents fully completed all case-plan requirements developed after the tragic death of A.N.1, and no evidence was presented linking the parents' belief that A.N.1's death was accidental to any ongoing risk of harm to the other children, when they had successfully completed drug-and-alcohol screenings, all visitations, parenting classes, and individual and separate counseling.
Moreover, in Haney , the circuit court prejudged A.N.2's-the youngest child's-dependency-neglect status. The circuit court ordered the parent "to surrender A.N.2 to DHS upon her birth or as soon as they were discharged from the hospital...." Haney , 2017 Ark. App. 437, at 2, 526 S.W.3d at 904. In contrast, here the circuit court proceeded through the proper legal channels to safeguard Hilburn's legal rights while assessing T.M.'s safety. The circuit court, only after hearing all the evidence regarding Hilburn's behavior regarding drug use and screenings that occurred both before and after T.M.'s birth, determined its findings. The dependency-neglect adjudication was based on appellant's ongoing methamphetamine use. In contrast to Haney , Hilburn had not completed any services at all related to the health-and-safety risks to her children posed by her ongoing drug addiction.
Hilburn's situation is similar to other cases affirming dependency-neglect findings when parents continue to use drugs, exposing themselves to criminal liability and impacting the ability to safely care for the child. See, e.g. , Gaer v. Ark. Dep't of Human Servs. , 2012 Ark. App. 516, 2012 WL 4128137 ; Chambers v. Ark. Dep't of Human Servs. , 2011 Ark. App. 91, 2011 WL 386966. Based on both findings that T.M.'s sibling was adjudicated dependent-neglected and that Hilburn had not demonstrated sustained sobriety-having used drugs throughout most of her pregnancy with T.M. and failing to report for drug screens after the birth-we hold that the circuit court did not clearly err in finding T.M. dependent-neglected.
The preponderance of the evidence before the circuit court proved that Hilburn had used illegal drugs while C.H. was in foster care and during her pending dependency-neglect case. Hilburn's continued drug use demonstrated her disregard for C.H. and severely hindered any efforts at reunification. It further indicated blatant disregard for T.M.'s health, safety, and *891 welfare. Not only did Hilburn fail to offer anything to refute this evidence, she corroborated it by confessing that sometime near the beginning of the last trimester of her pregnancy with T.M., she had used methamphetamine.
The circuit court weighed the conflicting evidence and resolved the conflicts, appropriately determining that the evidence supports a parental-unfitness finding. Given the circuit court's findings in C.H.'s case, there was good cause for concern about T.M.'s well-being. Those findings, previously addressed, explained not only why ADHS had removed C.H. from appellant's custody, but appellant's continued illegal drug abuse as well. The findings indicated how appellant's substance abuse and failure to obtain a safe and stable home prevented the return of C.H. to her custody, which also supported the need to remove T.M.
Appellant essentially argues that the circuit court incorrectly weighed the conflicting evidence. To find merit in her argument would require this court to act as a super fact-finder or second-guess the circuit court's credibility determination; however, such is not the appellate court's function. See Lynch v. Ark. Dep't of Human Servs. , 2012 Ark. App. 149.
Affirmed.
Abramson and Murphy, JJ., agree.